# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PRISCILLA GRISSON, ALVINO PERRILLIAT, and WILLIAM POWELL, as the Parents and Guardians of DUSHAUN POWELL and DEVONTA GRISSON, minors, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. |
| v. | ) ) | Judge |
| CITY OF CHICAGO and UNKNOWN CHICAGO POLICE OFFICERS, | ) ) ) ) ) | Magistrate Judge |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COME Plaintiffs, PRISCILLA GRISSON, ALVINO PERRILLIAT, and WILLIAM POWELL as the Parents and Guardians of DESHAWN POWELL and DEVONTA GRISSON, minors, and complaining of Defendants, CITY OF CHICAGO, and UNKNOWN CHICAGO POLICE OFFICERS, and state as follows:

### Introduction

1. This action, arising out of the violations of the U.S. Constitution and for transgressions of Illinois law caused by one or more of the Defendants, is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

**Jurisdiction and Venue**

2.  This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

**The Parties**

3.  Plaintiffs reside in Chicago, Cook County, Illinois.

4.  Defendant City of Chicago ("City") is a municipal corporation duly incorporated under the laws of the State of Illinois, which operates the Chicago Police Department.

5.  Unknown Chicago Police Officers (referred to collectively herein as "Defendant Officers") were at the time of this occurrence Chicago Police Officers. The Defendant Officers engaged in the conduct complained of while on duty in the course and scope of their employment and under color of law. They are sued their individual capacities. The Unknown Officers include those assigned to unmarked police cars with license plate numbers M154460 and M145217.

**Background**

6.  On April 16, 2010 at roughly 3:15 pm, Dushaun Powell and Devonta Grisson were outside after the end of the school day.

7.  While walking home from school, an unmarked Chicago Police car pulled up behind the boys, and Defendant officers called out for them to stop.

8.  Not understanding what was going on, Devonta continued walking.

9.  A second unmarked Chicago police car pulled over, and two Unknown Chicago Police Officers got out.

10. The unmarked squad cars had license plate numbers M154460 and M145217.

2

11.     Defendant Officers grabbed Devonta and slammed his head into a fence, causing bleeding and other injury.

12.     When Dushaun asked why the officers were so aggressive, Defendants grabbed him, told him to shut up, and threatened to bash his head too.

13.     Defendants handcuffed Dushaun and Devonta.

14.     Eventually, Defendants released the boys, telling them words to the effect of "we owe you one now."

**The City's Responsibility**

15.     The City of Chicago maintains a de facto policy, practice and custom of failing to properly train, supervise, discipline and control its officers, which was the moving force behind the use of excessive force against Plaintiffs.

16.     Municipal policy-makers have long been aware of the City's policy and practice of failing to properly train, monitor and discipline its police officers:

   a.     In 1999, following two high profile incidents of excessive force, the City Council held public hearings on the prevalence of excessive force, as well as the failure of the Department's disciplinary system. At those hearings, members of the Council assured the public that changes would be made to the Chicago Police Department policies and practices to address these issues.

   b.     On September 28, 1999, the then-Superintendent of police gave a speech highlighting problems with the City of Chicago's policies and practices relating to the use of force. Superintendent Hillard spoke specifically of the need for (1) better in-service training on the use of force; (2) early detection of potential problem officers; (3) an effective disciplinary system, and (4) officer accountability for the use of force.

3

  c. In a review commissioned by the Superintendent, John Marshall Law School found that although the City of Chicago's written policy on the use of force was in compliance with the law, more training of police officers was necessary for the written policy to be effective in practice.

  d. A few months later, in January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

  e. A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality. The JCGC findings were presented to Mayor Daley, Superintendent Hillard and the Chicago Police Board.

  f. Two years later, a federal jury in the case of *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at *2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department. The "City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off duty Chicago police officers who use excessive force against individuals" was found to have directly caused the constitutional harm. *Id.* at *1.

g. Responding to highly publicized events of criminal conduct by Chicago police officers in the summer of 2008, Police Superintendent Weiss admitted that there had been "an atmosphere" within the Department in which officers felt they were "above the law."

17. Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address that failure. Redress that was specifically promised by the City Council and the Superintendent has gone unfilled.

18. For example, the City's training program has not changed since 1999, despite repeated promises by the City for a more comprehensive training program. As a result, officers on the streets of Chicago are ill-equipped to make the necessary decisions on the use of force. Further, this lack of training greatly increases of the susceptibility of officers to improper and violent abuses of their police power through the unjustified use of force, such as that at issue in this case.

19. Similarly, the City has failed to institute any system for recognizing problem officers or to ensure an effective disciplinary system.

20. As a result of the City's policies, practices and customs, its officers are emboldened to use unlawful force by their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

21. At the time that the Defendant Officers used excessive force they knew that the City would not subject them to any meaningful investigation, discipline or criminal prosecution. Their misconduct in this case was a direct result of the City's unconstitutional policies, practices and customs.

5

## Count I – 42 U.S.C. § 1983
## Fourth Amendment – False Arrest.

22. Each of the foregoing paragraphs is incorporated as if restated fully herein.

23. The actions of the Defendant Officers, described above, whereby Defendants knowingly and unreasonably seized and detained Plaintiffs without probable cause, reasonable suspicion or any other lawful justification, constituted a deliberate violation of Plaintiffs' rights under the U.S. Constitution, thus violating the Fourth Amendment to the United States Constitution.

24. As a direct and proximate result of these Constitutional violations, Plaintiffs suffered physical injuries and other injuries including emotional distress, anxiety, humiliation, fear, and stress.

## Count II – 42 U.S.C. § 1983
## Fourth Amendment – Excessive Force

25. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

26. The actions of Defendant Officers, detailed above, constituted unreasonable, unjustifiable, and excessive force against Plaintiffs, thus violating Plaintiffs' rights under the Fourth Amendment of the United States Constitution.

27. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

28. At all times relevant to the above allegations, all of the Defendant Officers were acting under color of law and within the scope of their employment.

29. As a result of the Defendant Officers' unjustified and excessive use of force, Plaintiffs suffered damages including emotional distress.

### Count III – 42 U.S.C. § 1983
### Fourth Amendment – Failure to Intervene

30. Each of the foregoing paragraphs is incorporated as if restated fully herein.

31. While Defendant Officers used excessive force against and falsely arrested Plaintiffs, one or more of the Defendant Officers stood by and watched without intervening. These officers had a reasonable opportunity to prevent the harm had they been so inclined, but failed to do so.

32. At all times relevant to the above allegations, all of the Defendant Officers were acting under color of law and within the scope of their employment.

33. As a result of Defendants' failure to intervene to prevent the unlawful arrest of and excessive use of force against him, Plaintiffs suffered damages including emotional distress.

### Count IV — State Law Assault

34. Each of the foregoing paragraphs is incorporated as if restated fully herein.

35. As described in the preceding paragraphs, the conduct of the defendant officers created in Plaintiffs a reasonable apprehension of imminent harm.

36. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiffs' rights.

37. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

38. The misconduct described in this Count was undertaken by the defendant officers within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

39. As direct and proximate result of the Defendant Officers' acts, Plaintiffs suffered injuries including but not limited to emotional distress.

## Count V – State Law Claim
### 745 ILCS 10/9-102

40. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

41. Defendant City of Chicago is the employer of all of the defendant officers.

42. The defendant officers committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, jointly and severally, for compensatory damages and, because the Defendant Officers acted maliciously, wantonly, or oppressively, Plaintiffs seek punitive damages against the individual Defendant Officers in the individual capacities, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

Respectfully submitted,

\_\_\_/s/ James M. Baranyk\_\_\_
One of the Attorneys for Plaintiffs

Smith, Johnson & Antholt, LLC
112 S. Sangamon Street, 3rd Floor
Chicago, IL 60607
(312) 432-0400