IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DUSHAUN POWELL and DEVONTA GRISSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 10-cv-2872 |
| CITY OF CHICAGO, ET AL., | ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment [85] filed by Defendants City of Chicago and Chicago Police Officers Pablo Mariano, Darryl Hardy, Robert Stegmiller, Sean Brandon, Kerry Pozulp, and Jose Lopez. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion for summary judgment [85].

**I.    Facts**

In May 2010, Priscilla Grisson, Alvino Perrilliat, and William Powell, guardians of Dushaun Powell and Devonta Grisson[1], filed a complaint against the City and unknown police officers alleging violations of federal and state law for illegal seizure, excessive force, failure to intervene, and state law assault. Plaintiff have amended their complaint four times, adding Pablo

---

[1] On January 4, 2013, Defendants filed a suggestion of death upon the record, representing that Plaintiff Devonta Grisson died on January 1, 2013. Priscilla Grisson, grandmother and legal guardian of Devonta Grisson, then filed a motion to substitute parties, explaining that Devonta Grisson was killed on January 1, 2013, and asking permission to act as representative of Grisson's claims in this case. Defendants opposed the motion to substitute, maintaining that evidence of an estate does not exist and therefore Priscilla is not authorized to represent the decedent in any legal capacity. On March 19, 2013, the Court stayed the motion to substitute party, in order to give Plaintiffs time to investigate Defendants' concerns and look into establishing an estate for Devonta Grisson. The Court notes that the death of Devonta Grisson may lead to evidentiary issues at the time of trial, but for present purposes, Devonta's death does not alter the Court's resolution of Defendants' summary judgment motion.

1

Mariano, Darryl Hardy, Robert Stegmiller, Sean Brandon, Kerry Pozulp, Jose Lopez, and other unknown officers as Defendants.

In April 2010, Plaintiffs were students at Gage Park High School in Chicago, Illinois. On April 16, 2010, Devonta Grisson was about six feet tall, and Dushaun Powell was approximately 5'11" tall. Defendant Officers described themselves as follows. Officer Pablo Mariano is a Hispanic male with a caramel complexion, approximately 5'9'' tall. On April 16, 2010, he weighed approximately 245 pounds, had short black hair, and a heavy-set build. Officer Darryl Hardy is a Puerto Rican male, approximately 6'0" tall, with a lighter-than-caramel complexion. On April 16, 2010, he weighed approximately 200 pounds, had an athletic build, short black hair, and a short beard. Officer Stegmiller is a half Mexican and half German male, with a "white" or "olive" complexion, standing approximately 5'10'' tall. On April 16, 2010, he weighed approximately 195 pounds, had short, light brown hair and an average build. Officer Kerry Pozulp is a white male, approximately 5'10'' tall, and has a light complexion. On April 16, 2010, he weighed approximately 210 pounds, had a shaved bald head, an athletic build, and no facial hair. Officer Sean Brandon is a part African-American, part white, and part American-Indian male with a light complexion, standing approximately 5'8'' tall. On April 16, 2010, he weighed approximately 220 pounds and had short, dark hair with some graying and a large build. Sergeant Jose Lopez ("Lopez") is a Hispanic male with an olive complexion, standing 6'2'' tall. On April 16, 2010, he weighed approximately 300 pounds, had a heavy set build and short black hair, and was clean shaven.

In April of 2010, all Defendant officers were assigned to Unit 311, which is the Gang Enforcement Unit, in Area 1, and on April 16, 2010, Defendant officers were assigned to the 8th district, within Area 1, due to a recent increase in gang activity, shootings, and aggravated

batteries. They were dressed in plainclothes uniform, which may consist of cargo pants, jeans, t-shirts, sweaters, a vest, a belt, a police badge, a gun, handcuffs, and a flashlight, and riding in unmarked cars. On April 16, 2010, Mariano and Hardy were working as partners, as were Stegmiller and Brandon; Officer Pozulp rode with Sgt. Lopez.

During their depositions, Plaintiffs testified that on April 16, 2010, they walked home after school ended at approximately 2:00 p.m.[2] Grisson and Powell were accompanied by two friends from school, Aric Evans and Duel Thomas. The boys walked east on 63rd Street and turned south onto Artesian Avenue, a route they frequently took home from school. Plaintiffs first saw a police car traveling northbound on Artesian Avenue as they walked southbound. Plaintiffs thought the car was a police car because it was a Crown Victoria; neither Grisson nor Powell could provide any other description of that vehicle. Shortly after Plaintiffs saw the car, an officer in the car called Evans over to the vehicle, at which point Evans and Thomas walked up to the car. Plaintiffs continued walking on the sidewalk and did not hear the conversation between the officers and Evans and Thomas. Approximately two minutes after the unmarked car stopped to speak to Evans, both officers exited the vehicle to continue speaking with Evans and Thomas.

After the first car (car #1) stopped, a second unmarked Crown Victoria of unknown color pulled up behind it (car #2). The evidence presented at summary judgment supports an inference that at some point a third car (car #3) arrived where Plaintiffs were stopped, which was in front of a building on Artesian Avenue close to 63rd Street. According to Powell, car #3 arrived at the same time as car #2. Grisson did not see car #3 arrive and he does not know at what point during

---

[2] There is some discrepancy between the time that Plaintiffs stated they left school (approximately 2:00 p.m.) and when Plaintiffs were filmed on the POD camera walking toward 63rd Street and Artesian Avenue (3:18:27 p.m.). This fact is not material to the Court's resolution of Defendants' summary judgment motion.

3

the encounter it arrived, but Grisson did testify to six officers being present at the scene. Powell testified that he wrote down the license plate number for at least one of the cars. Defendants admit that the car with vehicle ID 3921 and plate M154460 was assigned to Officers Hardy and Mariano, and that Hardy and Mariano were on a team with Stegmiller, Brandon, Pozulp, and Lopez. Stegmiller testified that it was "common practice" to work with Officers Hardy and Mariano.

According to Grisson, an "Asian" male exited from the passenger side of car #2 and approached Plaintiffs.[3] He was short—only came up to Grisson's chest—with white skin tone, black hair, and dressed in plain clothes with a badge and a gun. He had a name tag but Grisson did not read it. Grisson described the driver of car #2, which the "Asian" officer exited from, as an older white male, approximately 5'9" tall, with a muscular build, wearing plain clothes, a hat with a Bears logo on it, a badge, and carrying a gun.

Powell describes one of the officers in car #2 as an older, African-American male, with caramel-colored skin, over six feet tall, with a stocky build. That officer was dressed in plain clothes with a vest, badge, gun, and nametag, which Powell did not read. Powell does not remember who the other officer was with the African-American male. According to Grisson, the officers in car #3 were a tall African-American male with a caramel complexion dressed in plain clothes and a white male, while the officers in car #2 were a thick, muscular "Asian" male and a white male wearing a Bears hat. Powell testified that the two officers in car #1 were "dealing

---

[3] As the officers' descriptions of themselves demonstrate, none of Defendants describe himself as "Asian American" or as being of Asian descent. Nevertheless, in their depositions Plaintiffs used the term "Asian" in describing the officer who was the partner of the officer whom Plaintiffs described as an older, white male wearing a Bears hat. In the interest of remaining true to the evidence, the Court will adopt Plaintiffs' descriptor "Asian" in referring to that officer in this opinion.

4

with" Thomas, the two officers in car #2 were "dealing with" Evans, and the two officers in car #3 were "dealing with" Plaintiffs.[4]

According to Grisson's testimony, upon arriving at the scene, the "Asian" officer approached Grisson and asked him where he was going, to which Grisson responded that he was not going anywhere. Grisson then put his hands in the air by his head with his palms facing forward to indicate he did not have anything, such as a gun, in his possession. The "Asian" officer then grabbed Grisson's arms and placed him in handcuffs. He walked Grisson over to a fence south of an alley, where Grisson stood with his back to the fence. Grisson asked the "Asian" officer if he had probable cause for his actions. At that point, the "Asian" officer's partner, the white male, exited the vehicle and said to Grisson, "So you think you're a smartass?" and then pushed Grisson's head into the fence. Grisson's head hit the top part of the wrought iron fence, where it came to a point. The blow cut his head just above his right ear and he began to bleed. The white officer retrieved tissues from his car and an officer cleaned up the blood by wiping it off of Grisson's face and shoes.[5] For summary judgment purposes, there is no dispute that the two officers who touched Grisson were the "Asian" officer and the white officer, who had come from the same car.

According to Powell, during the encounter, the white officer in a Bears hat asked Powell some questions and filled out a contact card for him. The questions included his name, address,

---

[4] Grisson believed that the allegedly "Asian" officer was travelling in car #2, while Powell testified that the "Asian" officer was travelling in car #3. Grisson also testified that he did not see the third car arrive, so what he believed to be car #2 may in fact have been car #3. Because Grisson could not say when car #3 arrived, and because it is a reasonable inference from the evidence that he may have confused car #2 and car #3, summary judgment does not hinge on this particular fact.

[5] During his deposition, Grisson could not describe the officer who cleaned him up.

where he was going, and his relationship to the other boys. This officer handcuffed Powell[6] and conducted a pat-down of his clothing to check for weapons. According to Powell's testimony, he was standing handcuffed next to the fence facing Grisson when the Asian officer—who he described as having black and gray hair and wearing a Chicago Bears winter hat—pushed Grisson into the fence and handcuff him.[7] After witnessing this, Powell told the officers to clean up Grisson's wound. According to Powell, the Asian officer handling Grisson wiped his head with napkins and responded by threatening to injure Powell's head as well if he did not remain quiet.

The officers wrote contact cards for all four boys, using school ID cards for some of the information. After filling out the contact cards, the officers released all of the boys except Thomas. The officers gave Thomas a ride home. Plaintiffs' encounter with the police that day lasted approximately 20-30 minutes. The contact cards were not inputted into the police database Hot Desk/LEADS system. Powell suffered no physical injuries as a result of his encounter with police on April 16, 2010, while Grisson suffered the gash above his right ear.

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

---

[6] Powell was in handcuffs for approximately five to ten minutes.

[7] Grisson testified that the "Asian" officer handcuffed him and the white officer with the Bears hat pushed his head into the fence; Powell testified that the "Asian" officer both handcuffed Grisson and pushed his head into the fence.

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. And the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S at 252.

### III. Analysis

Plaintiffs' fourth amended complaint alleges Fourth Amendment claims of illegal seizure, excessive force, and failure to intervene and state law claims for assault (against Defendant Officers) and indemnity (against the City of Chicago).

#### A. Federal Claims

Plaintiffs' evidence supports an inference that they were illegally stopped and detained by two Chicago police officers after school on April 16, 2010, and that Devonta Grisson was battered by one of the officers responsible for the stop and detention. In fact, Defendants do not argue that Plaintiffs' evidence is insufficient to demonstrate that a detention occurred and that

7

one of the officer used excessive force. Rather, the gist of Defendants' argument is that Plaintiffs' federal claims fail because Plaintiffs have not been able to identify which officers detained them and used excessive force and/or which officers failed to intervene. In support of their position, Defendants argue that the law is clear that a plaintiff must prove the personal unlawful actions of a particular defendant in order to recover from the defendant and that proximity alone cannot satisfy this requirement. However, as demonstrated below, taking the record in the light most favorable to Plaintiffs, significant questions of fact persist that prevent the Court from concluding as a matter of law that certain Defendants did not violate Plaintiffs' rights.

While it is true that a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation in the deprivation is not required. See, *e.g., Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). "An official satisfies the personal responsibility requirement of § 1983 if she acts *or fails to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Under this rule, police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable. See, *e.g., Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

The record supports the following inferences in favor of Plaintiffs. Powell recorded at least one of the license plate numbers of the vehicles who had stopped them, and one of the numbers was a match for Defendants Hardy and Mariano's car. Defendant Hardy identified the other officers with whom he was working at the time as Officers Stegmiller, Brandon, Pozulp, and Lopez. Defendants were driving three unmarked Ford Crown Victoria squad cars, and

Plaintiffs identified this type of car as the cars that arrived on the scene. In addition to collecting the license plate number, GPS also placed the car with this license plate number on the scene around the time of the incident. Further, video also confirmed that three unmarked squad cars and Plaintiffs were in the same area at around the same time. Plaintiffs provided descriptions of the six officers, the officers' plain-clothes dress, and the officer's vehicles from their independent recollection.

Plaintiffs' theory of the case, while not undisputed, is supported by the record. As Plaintiffs and their two friends walked southbound on Artesian, the unmarked squad cars approached them. The two officers in the first car ordered Evans and Thomas to approach their car. According to Plaintiffs' descriptions, this was a dark blue unmarked car carrying Lopez and Pozulp. Two other unmarked cars approached at roughly the same time. A shorter officer who appeared to be of Asian descent asked Grisson where he was going, and Grisson replied "nowhere." The male whom Plaintiffs identified as "Asian" was short, with white skin and black hair, in plain clothes, with a gun, badge, and a name tag. That officer then grabbed Grisson by his arm and handcuffed him. Grisson responded by asking about probable cause. Hearing this, the "Asian" officer's partner responded by saying, "So you think you are a smart ass?" Plaintiffs described this officer as white, about 5'9" with a muscular build, older, and wearing a plain-clothes uniform and a Chicago Bears hat. One of these two officers then grabbed Grisson and pushed his head into a fence spike. When Powell inquired what had happened, the white officer with the Bears hat told him to "Shut the fuck up, before we do you next." That officer proceeded to handcuff Powell and search his pockets. After being handcuffed for five to ten minutes, the boys were released.

Based on all the evidence, Plaintiffs believe that Defendant Stegmiller was the officer who struck Grisson and threatened Powell, that both Stegmiller and Brandon seized Plaintiffs, and that all Defendants were on the scene during the constitutional violations. Grisson testified that the "Asian" officer handcuffed him and the white officer with the Bears hat pushed his head into the fence, cutting him and causing his head to bleed; Powell testified that the "Asian" officer both handcuffed Grisson and pushed his head into the fence. Plaintiffs have described the non-"Asian" officer as a white male, 5'9" with a muscular build, older, and wearing plain clothes with a gun, badge, and wearing a Chicago Bears hat, and Officer Hardy described Defendant Stegmiller as a 5'8" white male in his forties with a medium frame and short brown hair. Defendant Stegmiller arguably fits the Plaintiffs' description. In addition, Defendant Stegmiller's partner, Officer Brandon, is shorter and bi-racial. According to Plaintiffs, this was the man that Plaintiffs believed was "Asian." It is not too much of a stretch for high-school-aged boys to identify a man with Native American ancestry as being of Asian descent. Grisson's description of this man fits with Officer Hardy's description of Brandon as well. In addition, the evidence supports an inference that Officer Hardy and his partner Mariano were on the scene of this incident. Six officers were implicated by Plaintiffs and Plaintiffs have sufficiently described the two officers who are at the core of their complaint.

Taking the record in the light most favorable to Plaintiffs as the non-moving party, there is a triable issue of fact as to whether that the two officers who touched Grisson were the officer whom Plaintiffs believed to be of Asian descent and the white officer, who had come from the same car. And, again applying that standard as the Court is required to do at this point in the case, whichever officer was not directly responsible for using excessive force was standing by idly. If a plaintiff can demonstrate at trial that an officer attacked him while his partner ignored a

realistic opportunity to intervene, he can recover. See *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). Defendants repeatedly argue that Plaintiffs have failed to identify the officers involved in the altercation, but the evidence at this stage supports a reasonable inference that Brandon and Stegmiller were on duty on April 16, 2010, in the area of the altercation, working together (along with Officers Hardy, Mariano, Pozulp, and Lopez), and, based on Plaintiffs' descriptions, were the officers involved with Plaintiffs. Further, Grisson has testified as to which officer he believed struck him and Powell has similarly weighed in. The discrepancies between witnesses accounts—including whether Brandon and Stegmiller were in the second or third car to arrive, whether Brandon was of Asian descent or bi-racial, and whether Brandon or Stegmiller actually struck Grisson—have certainly caused some confusion and will undoubtedly weigh in the credibility balance at trial, but do not provide grounds for summary judgment in favor of Defendants Brandon and Stegmiller on the majority of Plaintiffs' federal claims.[8]

With respect to the other officers—Defendants Hardy, Mariano, Pozulp, and Lopez—Plaintiffs not only have failed to sufficiently describe those officers, but also have failed to demonstrate that they took any action against Grisson or Powell or that they could have intervened. Plaintiffs' own testimony is that the other four officers were dealing with Evans and Thomas and had no interaction with Plaintiffs.[9] An officer's mere presence at the scene fails to provide the requisite personal involvement to support a false arrest or excessive force claim. See *Morfin v. City of Chicago*, 349 F.3d 989, 1000-01 (7th Cir. 2003) (officer who transported arrestee was custodian not subject to suit for false arrest); *Ortiz v. City of Chicago*, 2010 WL

---

[8] There is no evidence that any officer used excessive force on Powell. Therefore, summary judgment in favor of all Defendants is appropriate as to Powell's excessive force claim.

[9] Plaintiffs both allege that the first car to arrive was the one "dealing" with Aric Evans and Duel Thomas and that the first car to arrive was driven by Defendants Pozulp and Lopez. See Pls.' Facts ¶¶ 21, 42-43. Plaintiffs further argue that the four officers other than Brandon and Stegmiller were "dealing with" Thomas and Evans. See Pls.' Resp. to Defs.' Facts ¶ 33.

3833962, at *8 (N.D. Ill. Sept. 22, 2010); *cf. Maltby v. Winston*, 36 F.3d 548 (7th Cir. 1994) (personal responsibility may be show if an officer "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent"). Because Plaintiffs have failed to present any evidence that Officers Hardy, Mariano, Pozulp, and Lopez directly participated in the stop, detention, and use of force with respect to Plaintiffs, or had a realistic opportunity to step forward and prevent a fellow officer from violating Plaintiffs' rights but fail to do so—but rather have testified that the attention of these officers was otherwise occupied—summary judgment in favor of Defendants Hardy, Mariano, Pozulp, and Lopez on all claims is appropriate.

B.   **State Law Claims**

In their response brief, Plaintiffs agreed to voluntarily dismiss the assault claim as to Devonta Grisson, but maintain that Powell has put forth sufficient evidence of an assault to survive summary judgment. Defendants' sole argument as to why summary judgment is appropriate on Powell's assault claim is that Powell has failed to identify which officer caused him to feel an "imminent apprehension of an imminent battery." As previously set forth, taking the record in the light most favorable to Plaintiffs, a reasonable inference can be drawn that these six officers encountered Plaintiffs on April 16, 2010, that Stegmiller and Brandon stopped and detained both Plaintiffs, and that either Stegmiller or Brandon used excessive force on Grisson. Furthermore, Powell testified that right after Grisson's head was pushed into a fence spike, the white officer (fitting the description of Officer Stegmiller) with the Bears hat told him to "Shut the fuck up, before we do you next." Powell's testimony creates a reasonable inference that Stegmiller threatened to batter Powell if he said anything else. Thus, summary judgment will be

12

granted in favor of Defendants on Grisson's assault claim, but Powell's assault claim against Stegmiller and the City of Chicago survives.

## III. Conclusion

For these reasons, the Court grants in part and denies in part Defendants' motion for summary judgment [85]. Defendants Pablo Mariano, Darryl Hardy, Kerry Pozulp, and Jose Lopez are dismissed from this lawsuit. Summary judgment in favor of Defendants is granted on the assault and indemnification claims brought by Grisson and on the excessive force claim brought by Powell. The claims that remain pending are (i) both Plaintiffs' illegal seizure and failure to intervene claims as to Defendants Stegmiller and Brandon, (ii) Grisson's excessive force claim as to Stegmiller and Brandon, and (iii) Powell's assault and indemnification claims against Stegmiller and the City of Chicago.

Dated: March 27, 2013

_____
Robert M. Dow, Jr.
United States District Judge